## ROBERT L. JUNGHANS

*v.*

## MIGUEL QUIÑONES CABEZUDO ET AL.

---

San Juan, Law, No. 608.

One Rodriguez, years ago, owned a large tract of land in Porto Rico. He had obtained 105 cuerdas of it from certain poor people who had secured an expediente posesorio therefor, and 94½ cuerdas of it from another set of poor people who had also secured an expediente posesorio for the latter quantity. Certain of his creditors executed on the 105-cuerda tract, and there was evidence tending to show that Rodriguez put them in-possession of it with the officers. These creditors sold this 105-cuerda tract to defendants. Plaintiff thereafter became possessed of some 440 additional cuerdas of Rodriguezs land. Defendants and plaintiff became involved in a dispute over the location of their respective boundary lines. Plaintiff, when examining the registry of property, found that the 94½ cuerdas were still in the name of Rodriguez, and were being assessed for taxes to him, or else plaintiff himself secured such tract to be so assessed. Plaintiff then bought the 94½-cuerda tract at tax sale, and claiming that defendants were in possession of the land described in his tax deed, instead of the 105 cuerdas which they bought, brought suit to eject them. After the cause was partially tried before a jury, the latter was discharged, and by stipulation the case was finished before the court. Held: That where the evidence is conflicting, and the descriptions in the deeds of both paties indefinite, and where the remedy is sought is not only to eject defendants, but to cancel their title, and assert that of plaintiff to the same land, it being claimed that both titles are inscribed, the proper procedure is a suit in equity for such purpose, and

Junghans v. Cabezudo.

to quiet the title, or else the cause should be relegated to the insular court that put defendants in possession of the 105 cuerdas, so that the matter may be finished there.

Opinion filed June 22, 1909.

Mr. *Frank Antonsanti,* attorney for plaintiff.

Messrs. *José Tous y Soto, José A. Poventud,* and *Chas. M. Boerman,* attorneys for defendant Miguel Quiñones Cabezudo.

Mr. *Herminio Diaz,* attorney for defendants Diaz & Hutton.

RODEY, Judge, delivered the following opinion:

This is a suit in ejectment, brought by the plaintiff to eject the defendants from a tract of land said to contain 94½ cuerdas and situated in the barrio of Bairoa, in the municipal jurisdiction of Caguas. Service was had upon all the defendants, but only Miguel Quiñones Cabezudo answered, Diaz & Hutton having defaulted. On the 25th of May last the trial was begun before the court and a jury; but, after the plaintiff's case was finished, and on the 26th of May, the parties stipulated that the jury might be discharged and the cause proceed before the court alone, who should try the same, and render judgment therein under all the evidence, both that taken before the jury and that taken before itself, as fully as if the jury had not been waived. Quite a lot of diametrically opposing testimony was taken, and several maps, registrar's certificates, deeds, and other exhibits were introduced and many witnesses were examined.

It is a most unsatisfactory situation. We cannot determine from the proofs whether the land in fact belonged to anybody previous to the year 1900. About that time two different sets of poor people applied for expedientes posesorios on land in that vicinity. One tract applied for by one set of these poor people was said to contain 105 cuerdas, and the other one was said to contain 94½ cuerdas, as stated in the complaint. A priest by the name of Eugenio Lorenzo Rodriguez, as it is claimed, got title from these two sets of poor people for all of this land, and previously had a much larger tract adjoining the same. De Ford & Company, a mercantile firm, sued the priest, and had the 105-cuerda tract adjudicated to it on execution sale, and there is evidence that he went on the ground and delivered possession to De Ford & Company, and that the present defendant Miguel Quiñones Cabezudo is in possession of the same tract of land that was then delivered to De Ford & Company by the priest under this execution. There is also some evidence tending to show, but, of course, it is denied by the other side, that about half the 94½-cuerda tract is now in possession of said defendant Miguel Quiñones Cabezudo, and that the remainder of the 94½ cuerdas is in possession of the other defendants, Diaz & Hutton, who have defaulted. There is evidence tending to show that the plaintiff, Robert L. Junghans, became possessed of all the larger tract of land, something over 400 cuerdas, which the priest owned in that vicinity, and which is supposed to adjoin the land in dispute, and that there was some contention between the plaintiff and the defendant Miguel Quiñones Cabezudo about where the boundary line should be between their respective tracts. The evidence as to the possession of the land in controversy for years back

IV. Porto Rico—35.

previous to 1902, and since that time up to the time in 1905 when the defendant Miguel Quiñones Cabezudo bought from De Ford & Company and took actual possession is in absolute conflict. The land delivered to De Ford & Company on the execution sale, which is alleged to be the 105 cuerdas, is described as being bounded on the north, south, east, and west by other lands of the priest. While the 94½-cuerda tract is described as being bounded on the north by the Rio Grande and lands of Don Pascual Borras, on the south and east by lands belonging to the priest, and on the west by lands belonging to Pascual Borras. The posesorio certificate for these 94½ cuerdas of land is a few months younger in the year 1900 than the one for the 105-cuerda tract. The probabilities are that said tract, or both tracts, whichever it is, for it is not certain whether there are one or two tracts, were occupied for years previous to the year 1900 when these expedientes posesorios were applied for, by the peons or poor people living in that vicinity, and that none of them had any title at all to the land save such as might be growing in their favor through prescription, and it is probably also true that there was no better or different sort of possession of it up to 1905, when Quiñones took possession, although the evidence tends to show that De Ford & Company received actual possession through an officer of the court, the priest pointing out the lines of the land he delivered in 1902, and there is evidence tending to show that the land now in possession of all the defendants is the same tract which the priest thus turned over. The priest left the country years since and could not be procured to testify.

As near as we can make out, the plaintiff, Junghans, became vexed at the defendant Quiñones for encroaching on the north

Junghans v. Cabezudo.

boundary of his large 400-and-odd-cuerda tract, and, in search-ing the records, found these two probably more or less, if not entirely, conflicting expedientes posesorios on file in the regis-try, and hence he either procured the 94½-cuerda one, which seemed still to belong to the priest, to be assessed for taxes, although there is no evidence of that fact, or else, finding that the same was in fact assessed for taxes, waited his chance and bought it in at the tax sale, so as to circumvent the defendant Quiñones, who, he believed, was not in possession of the proper land which De Ford & Company got or should have got from the priest.

The plaintiff, Junghans, bought the land he is suing for at a tax sale on the 22d of May, 1908, or only about nine months be-fore he brought this suit. He was not put in possession by the insular authorities who sold him the land, and never has been in possession of it, and bought it at tax sale with full knowl-edge that the defendant Quiñones and the defendants Diaz & Hutton were in possession of all that he could claim under the tax sale he thus bought, and knew, or had good reason to know, that they were claiming title under the 105-cuerda expediente.

Now, it is fundamental in ejectment, that every plaintiff must recover upon the strength of his own title, and not upon the weakness of that of his adversary. A plaintiff, in order to recover, must identify the land beyond any doubt or cavil (Ruiz v. Pacheco, 2 Castro, P. R. 445; Verges y Otra v. Pietri y Otros, 2 Castro, P. R. 518); and the testimony on that ques-tion is absolutely conflicting and diametrically opposed on each side.

Under these circumstances, the plaintiff ought not to recover. But neither do we think that we ought to render judgment

Junghans v. Cabezudo.

against him.   He bought and paid $1,200 for the title to 94½ cuerdas of land at an insular tax sale, and he ought to have the opportunity to invite the insular authorities to put him in possession of the land he bought, or, on failure so to do, to return him his money.   It may in fact be that he has the better title to 94½ cuerdas of land there against all of these defendants, but such fact has not been shown to us by a preponderance of the evidence.

If the parties are left *in statu quo,* the defendants, when they attempt to quiet their title, must make Junghans a defendant, and he can assert his rights in that proceeding unless the insular authorities settle the matter in the meantime, so we have concluded:

That the best thing to do is to dismiss the case for failure of proof of identification, without prejudice, so that the said Junghans can thus call upon the government to give him the land it sold him, and put him in possession of it, or so that he can go into the insular court that issued the execution and put De Ford & Company in possession of the 105-cuerda tract, and there litigate his rights, which, in our opinion, is the proper tribunal in which so to do, as it has had jurisdiction of one side of the case heretofore.   It would be utterly impossible for us to render any judgment on the evidence here that would be effective.   If we should find for the plaintiff, who could put him in possession?   The marshal would have no better knowledge when he went to the grounds than we have from the record.   Therefore we do not think that we ought to disturb the possession of the defendants.

The default against Diaz & Hutton will therefore be set aside, and the cause will be dismissed without prejudice, each

side paying their own costs, which the clerk will tax against them, and a proper entry to that effect will be made.